# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44716

|  |  |  |
|---|---|---|
| In Re: SRBA CASE NO. 39576 | ) | |
| SUBCASE NO. 37-00864 | ) | Boise, December 2017 Term |
| ------------------------------------------------------- | ) | |
| GARY AND GLENNA EDEN, | ) | 2018 Opinion No. 17 |
| | ) | |
| Plaintiffs-Appellants, | ) | Filed: March 2, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the Snake River Basin Adjudication, State of Idaho.
Hon. Eric J. Wildman, District Judge.

The judgment of the district court is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to Respondent.

Hawley, Troxell, Ennis & Hawley, LLP, attorneys for Appellant. Merlyn W. Clark argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, attorney for Respondent. Shantel Chapple Knowlton argued.

_____

BEVAN, Justice.

This is an appeal from the Snake River Basin Adjudication ("SRBA"). Gary and Glenna Eden (the "Edens") sought to file a late notice of claim for their Water Right No. 37-864 which was not claimed during the pendency of the SRBA and therefore was decreed disallowed. In the SRBA, the Edens alleged that the SRBA's *Final Unified Decree* and the *Closure Order* should be set aside as void because they did not receive sufficient notice of the SRBA proceedings to satisfy due process. Further, the Edens argued they were not personally served with the required notice of default pursuant to Idaho Rule of Civil Procedure 55(b)(2). Finally, the Edens claimed that unique and compelling circumstances justify relief from the final judgment under Idaho Rule

1

of Civil Procedure 60(b)(6). The SRBA court disagreed and denied the Edens' relief on any of these grounds. The court entered judgment reflecting its conclusions. Edens timely appealed and we affirm the district court for the reasons below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. SRBA Case History and Procedures.

On June 17, 1987, pursuant to authority from Idaho's legislature in 1985 and 1986, the Director of the Idaho Department of Water Resources ("IDWR") filed a petition in the name of the State to begin the SRBA, and on November 19, 1987, the adjudication was commenced. Its purpose was to ultimately fashion a unified decree determining all water rights from the Snake River Basin water system. The decree would allow for the creation of an accurate schedule of water rights to assure the proper delivery of water in times of shortage.

At its commencement, the SRBA maintained "no reasonable method of initiating the proceeding; . . . notice to potential claimants . . . was provided by the existing Rules of Civil Procedure." *In re SRBA Case No. 39576*, 128 Idaho 246, 251, 912 P.2d 614, 619 (1995) (hereinafter *Basin-Wide Issue 3*). One of the primary difficulties in a general stream adjudication like the SRBA, where thousands of claims and potential parties are involved, is that "a requirement of personal service would be too onerous, impractical and confusing in its employment, defeating any purpose for meaningful notice." *Lu Ranching Co. v. United States*, 138 Idaho 606, 610, 67 P.3d 85, 89 (2003) (citing *In re Rights to the Use of Gila River*, 171 Ariz. 230, 241, 830 P.2d 442, 453 (1992)).

In light of these realities, "it was necessary for the Legislature to provide special procedural rules for the initiation of the SRBA." *Basin-Wide Issue 3*, 128 Idaho at 251, 912 P.2d at 619. These rules are generally set forth in chapter 14, Title 42, Idaho Code, and include what are known as "first and second round" service procedures codified in Idaho Code section 42-1408. Additionally, this Court granted expanded powers to the district judge managing the SRBA:

> [This Court] issued a Supplemental Order Granting Additional Powers to the District Judge. In that order, this Court granted the district court "the authority and power to modify the procedure for making service of pleadings, motions, notices of hearing and other documents and the procedure of giving notice of hearings and trials before the court or any masters appointed by the court." In response to this order, the district court issued SRBA Administrative Order 1, [A.O.1], supplementing the applicable Rules of Civil Procedure with specialized

2

procedures "to the extent necessary to allow for the fair and expeditious resolution of all claims or issues in the SRBA."

*Id.*

Pursuant to the authority granted in A.O.1 the district court adopted a procedure to provide notice which it called the Docket Sheet procedure. A.O.1 ¶ 6. The SRBA utilized this procedure by issuing monthly Docket Sheets which included a list of all orders, pleadings (except responses, pleadings or orders filed in subcases), and other documents filed with or issued by the SRBA court since the last Docket Sheet. The Docket Sheet is posted in the District Court of each county within the SRBA boundaries and made available at IDWR's central and regional offices. The Docket Sheet is also posted on the SRBA website. Interested persons also have the option of paying a nominal fee to subscribe to the Docket Sheet. *Id.* § 6(c) "Compliance with the Docket Sheet Procedure constitutes notice to all parties to an adjudication." *Id.* § 6(f)(3)(b).

As the SRBA began working toward a final, unified decree, the district court determined that it was appropriate to begin the basin closure process. Accordingly, it began informing water users that it would start closing claims in specific water basins. The court issued an Order which it called *Order Establishing Deadline For Late Claim Filings in Basins 01 . . . 37 . . .* ("Deadline Order") to inform individuals of the process. The Deadline Order was not mandated by chapter 14, Title 42, Idaho Code, but it was provided as an additional courtesy to water users.

The Deadline Order was issued in October 2012 and provided that the last date to file a Motion to File Late Claim was January 31, 2013. Pursuant to the Order, "[n]o late claims would be accepted for filing." The Deadline Order admonished potential claimants to "examine Exhibit 1 [a list of *non-de minimis* water rights from IDWR's water rights database, which included Water Right No. 37-864] to determine whether the listed water right numbers [were] active water rights." *Id.*

On August 26, 2014 the SRBA court culminated its 27-year effort and issued the *Final Unified Decree* for the SRBA. The *Final Unified Decree* decreed more than 158,600 water rights. Ann Y. Vonde *et al.*, *Understanding the Snake River Basin Adjudication*, 52 Idaho L. Rev. 53, 56 (2016). With very limited exceptions, this decree is "conclusive as to the nature and extent of all water rights within the Snake River Basin within the State of Idaho with a priority date prior to November 19, 1987" and is "binding against all persons." *Final Unified Decree*

3

(August 26, 2014); Idaho Code § 42-1420(1). The *Final Unified Decree* incorporated Attachment 6 which sets forth "water rights of record with the Idaho Department of Water Resources that were required to be claimed but were not claimed in this proceeding and therefore were decreed disallowed." The Edens' Water Right No. 37-864 is included in Attachment 6 as an unclaimed water right which was expressly disallowed.

### B. Statement of Facts

The SRBA court found that the Edens were mailed first round service notice on September 19, 1988 regarding a water right that is not at issue in this case. That notice included the following warning in all capital letters: "PLEASE REMEMBER!!! FAILURE TO FILE A REQUIRED NOTICE OF CLAIM WILL RESULT IN A DETERMINATION BY THE COURT THAT THE WATER RIGHT NO LONGER EXISTS." In addition to this notice being mailed to the Edens, it was circulated throughout the Snake River Basin, including in Lincoln County by being published in a newspaper of general circulation (The Lincoln County Journal).

In 1992, the Edens purchased 40 acres of real property and its appurtenant water rights from Richard and Carolyn Bateman, which included two water rights. First, Water Right No. 37-864 decreed in 1918 with a priority date of 1896. Water Right No. 37-864 allows diversion of 1.00 cfs from the Big Wood River for the irrigation of the 40 acres in Lincoln County, Idaho. Second, a supplemental storage right from American Falls Reservoir District No. 2. Typically, Water Right No. 37-864 is delivered during the first part of the irrigation season through July, at which time the supplemental storage water is delivered from American Falls Reservoir District No. 2.

On or about April 28, 2005, IDWR sent the Edens a letter requesting they verify that their address had changed. The letter made reference to "SRBA Notices of Claim to a Water Right #37-365, 37-366 and 37-367B and Decrees #37-10322 and 37-10953."[1] The letter requested that the Edens verify that their address had changed. Glenna Eden signed the letter and returned it in May 2005, identifying the Edens' Shoshone address.

It is undisputed that IDWR did not receive a claim on Water Right No. 37-864 after the first notice. IDWR therefore conducted second round service notice in conformity with Idaho

---

[1] Water Right No. 37-10953 was not connected to the 40-acre parcel the Edens purchased in 1992. The Edens' predecessors in interest had properly claimed that water right in the SRBA and received a Partial Decree for water right No. 37-10953 in 2002.

Code section 42-1408(4) as to Water Right No. 37-864. This notice was sent to the Edens on or about May 5, 2005. Glenna Eden signed a certified mail receipt for the second round notice on May 6, 2005. It was further undisputed during the SRBA court hearing that the Edens received the second round notice.

The notice specified:

## IMPORTANT LEGAL NOTICE . . . .

Records of the Idaho Department of Water Resources (IDWR) indicate that you **may** own or have an interest in a water right in the Snake River Basin, but have **NOT** filed a Notice of Claim with IDWR for this water right. This notice serves as your second and **FINAL** notice of your responsibility to file a notice of claim. **FAILURE TO FILE A REQUIRED NOTICE OF CLAIM WILL RESULT IN A DETERMINATION BY THE COURT THAT THE WATER RIGHT NO LONGER EXISTS.**

### YOUR FILING DEADLINE IS AUGUST 5, 2005

As required by Idaho Code section 42-1408(4), the second round service notice also provided the Edens with instructions for filing a notice of claim in the SRBA, including that "Notices of Claims must be filed on forms prepared by IDWR or a reasonable facsimile" and that failure to include the required filing fee would "result in a rejection of the Notice of Claim." These requirements are also specified in chapter 14, Title 42, Idaho Code. *See* I.C. §§ 42-1409, 42-1414.

The Edens claim that they responded to this notice by including certain unknown[2] and unnamed documents in the letter they returned to IDWR with their confirmation of change of address. IDWR did receive some documents from the Edens, because on May 19, 2005, IDWR staff drafted a response letter to the Edens confirming receipt of some enclosures related to Water Right No. 37-864. IDWR's letter is unsigned; the documents the Edens enclosed are not named; and there is no evidence that the letter was ever delivered to the Edens' Shoshone address. When the Edens did not receive a reply from IDWR confirming their address change, they assumed IDWR had accepted their submission and a claim for Water Right No. 37-864 had been filed, even though no claim was made on an IDWR form, or a reasonable facsimile, nor was any filing fee paid.

---

[2] The Edens offered no evidence as to what "documentation" they allegedly enclosed with the change of address letter.

Nearly ten years later, on March 20, 2015, the Edens received a letter from the Treasurer/Secretary for Water District 37 indicating that Water Right No. 37-864 would no longer be delivered because it was disallowed in the State's adjudication process on February 2, 2013. The letter also indicated that as of that date IDWR records "show the water right in the name of Anthony M. Gomez [sic]. Water Right 37-864 had not been transferred to [Edens'] ownership." In 2016, during a Board of Directors meeting of the Big Wood Canal Company, the Edens' storage water in American Falls Reservoir District No. 2, supplemental to Water Right No. 37-864, was also deemed undeliverable because it was no longer valid.

On September 30, 2016, over two years after the entry of the *Final Unified Decree*, the Edens filed a Motion to File a Late Claim and a Motion to Set Aside the *Final Unified Decree* and *Closure Order*. In their Memorandum in Support of the Motion to Set Aside, the Edens claimed that the Final Unified Decree and Closure Order was void with regard to its effect on Water Right No. 37-864 under Idaho Rule of Civil Procedure 60(b)(4) because they did not receive sufficient notice and an opportunity to be heard. Additionally, the Edens argued unique and compelling circumstances existed to justify relief under Idaho Rule of Civil Procedure 60(b)(6). Namely, the Edens maintained that despite confirming their current mailing address with IDWR they were never informed that Water Right No. 37-864 remained unclaimed. Therefore, the Edens asserted that they should be allowed to file a late claim for Water Right No. 37-864 because they not only acted in good faith and exercised due diligence in the protection of their right, but their water right was previously decreed, had historically been administered, and would not result in prejudice to other water users in Basin 37.

On October 14, 2016, the State filed its response to the Edens' motions. The State argued that the Edens received sufficient notice which informed the Edens that they needed to file a claim for Water Right No. 37-864. The State asserted, as mandated by Idaho Code section 42-1408, that first and second-round service, as well as the district court's issuance of the Deadline Order, informed the Edens that Water Right No. 37-864 was unclaimed. In addition to first and second round notice, the State argued that the Edens failed to establish that unique and compelling circumstances existed to warrant setting aside the *Final Unified Decree*.

The State further contended the Edens sat on their rights despite proper first and second round service and the Motion to Set Aside was not filed within a reasonable time. Even if first and second-round service was not sufficient, the Edens reasonably should have known that their

right was not claimed, at least by the time the *Final Unified Decree* was issued. Finally, the State maintained that allowing the Edens to assert a claim for a water right disallowed over three years previously would prejudice water users with rights junior to 37-864 because it would reduce the legally available water in a Basin with a history of drought.

In its Order Denying the Motion to Set Aside and the Motion to File a Late Claim, the district court determined that: (1) the record contradicted the Edens claim of inadequate service; (2) the court was not required to give Edens three days' written notice prior to entry of the disallowal because the disallowal of an unclaimed water right in a general adjudication is not a default judgment; and (3) the Edens did not timely file a Rule 60(b)(1) motion nor did they show unique and compelling circumstances justifying relief under Rule 60(b)(6). On December 19, 2016, the Edens timely filed a notice of appeal.

## II.     ISSUES ON APPEAL

This case presents several issues on appeal for this Court to resolve.  They are:

A.     Did the district court err when it determined the Partial Decree of Disallowal could not be set aside under Idaho Rule of Civil Procedure 60(b)(4) because the Edens received the statutorily required second round service notice?

B.     Should the judgment of the district court be set aside under Idaho Rule of Civil Procedure 60(b)(4) because the statutorily mandated second round service notice was inadequate?

C.     Under Idaho Rule of Civil Procedure 55(b)(2), which requires three-day notice in the event of a default judgment, did the district court improperly rule that due process did not require that the Edens be personally served with notice of the *Closure Order*?

D.     Did the district court err when it held that the Partial Decree of Disallowal would not be set aside under Idaho Rule of Civil Procedure 60(b)(6) because "unique and compelling" circumstances did not exist?

E.     Did the district court err when it denied the Edens' Motion to File Late Notice of Claim because their Motion to Set Aside the Partial Decree of Disallowal was denied?

F.     Under Idaho Code section 12-121, and Idaho Appellate Rules 40 and 41, is the State entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

### A.  Rule 60(b)

7

In determining the appropriate standard of review for a motion for relief under Rule 60(b), the Court must consider what subsection of the rule is being invoked. In this case two separate subsections of the rule are being invoked, each with a different standard of review.

"Whether a judgment is void is a question of law." *Jim & Maryann Plane Family Tr. v. Skinner*, 157 Idaho 927, 342 P.3d 639, 643 (2015) (quoting *State, Dep't of Health & Welfare v. Housel*, 140 Idaho 96, 100, 90 P.3d 321, 325 (2004)). We exercise de novo review over legal questions. *Fields v. State*, 155 Idaho 532, 534, 314 P.3d 587, 589 (2013).

"Where discretionary grounds are invoked, the standard of review is abuse of discretion." *Berg v. Kendall*, 147 Idaho 571, 576, 212 P.3d 1001, 1006 (2009) (quoting *Knight Ins., Inc. v. Knight*, 109 Idaho 56, 59, 704 P.2d 960, 963 (Ct. App. 1985). Rule 60(b)(6) presents a discretionary decision for the trial court. Such a decision will be upheld if the trial court "(1) correctly perceived the issue as discretionary, (2) acted within the boundaries of its discretion and consistent with the applicable legal standards, and (3) reached its determination through an exercise of reason." *Waller v. State, Dep't of Health & Welfare*, 146 Idaho 234, 237, 192 P.3d 1058, 1061 (2008) (citation omitted). "If the trial court applies the facts in a logical manner to the criteria set forth in Rule 60(b), while keeping in mind the policy favoring relief in doubtful cases, the court will be deemed to have acted within its discretion." *Id.*

"A determination under Rule 60(b) turns largely on questions of fact to be determined by the trial court." *Id.* (quoting *Idaho State Police ex rel. Russell v. Real Property Situated in the County of Cassia*, 144 Idaho 60, 62, 156 P.3d 561, 563 (2007)). Those factual findings will be upheld unless they are clearly erroneous. *Id.*, 146 Idaho at 237–38, 192 P.3d at 1061–62. "[A] factual finding will not be deemed clearly erroneous unless, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *State, Dep't of Health & Welfare v. Roe*, 139 Idaho 18, 21, 72 P.3d 858, 861 (2003). "[C]lear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence." *Id.*

**B. Due Process.**

"Due process issues are generally questions of law" over which this Court exercises free review. *Meyers v. Hansen*, 148 Idaho 283, 287, 221 P.3d 81, 85 (2009) (citation omitted).

# IV. ANALYSIS

**A.** **The district court did not err when it determined the Partial Decree of Disallowal could not be set aside under Idaho Rule of Civil Procedure 60(b)(4) because the Edens received the statutorily required Second Round Service Notice.**

The Edens argue they should have been granted relief under Idaho Rule of Civil Procedure 60(b)(4) from the Partial Decree of Disallowal because the record does not support the finding of the district court that they were served with the statutorily required second round service notice. Additionally, the Edens claim that the second round service they received was facially defective. Therefore, the Edens contend the judgment is void for lack of due process. We disagree.

1. <u>The district court correctly concluded that the Edens received the statutorily required second round service notice.</u>

"Generally, the Court may declare a judgment void only for defects of personal jurisdiction or subject-matter jurisdiction." *Meyers*, 148 Idaho at 291, 221 P.3d at 89 (2009) (citation omitted). "However, a judgment is also void if the court's action amounts to a plain usurpation of power constituting a violation of due process." *Id.* (internal quotations and citation omitted). "Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *Id.* (citation omitted). An individual must therefore be provided with notice and an opportunity to be heard. *Id.* At the same time, "[d]ue process is not a rigid concept. Instead, the protections and safeguards necessary vary according to the situation." *Id.* (citation omitted).

As set forth above, the notice requirements specific to the SRBA are set forth by statute. *Basin-Wide Issue 3*, 128 Idaho at 255, 912 P.2d at 623.. Pursuant to Idaho Code section 42-1408(1)-(3), IDWR served notice of the SRBA's commencement. Later, IDWR also provided second round service "[u]pon expiration of the period for filing notices of claims." I.C. § 42-1408(4). Idaho Code section 42-1408(4) requires, as part of the second round service process, that IDWR identify unclaimed water rights, then for each such unclaimed water right, undertake a "reasonably diligent effort . . . to determine the land to which the possible claim is appurtenant, the last known owner of that land, and the last known address of that owner." Additionally, the statute requires IDWR to file adequate proof of service of second round service with the court: "The [IDWR] director shall file with the district court such proof of service as may be required

9

to demonstrate compliance with the above [notice] requirements" I.C. § 42-1408(5). The SRBA procedures for first and second round notice are adequate to meet constitutional due process requirements. *Lu Ranching Co.* 138 Idaho at 608–10, 67 P.3d at 87–89.

The factual findings of the SRBA court are supported by the record. The documents the Edens filed with the district court confirm they received second round service notice. The Affidavit of Danni M. Smith ("Smith Affidavit"), including Exhibit A, the Commencement Notice for Basin 37, Part 1, and Exhibit B, the mailing list, were filed by the Edens with the district court in support of their motions. Also attached to an affidavit of counsel (the Hofstetter Affidavit), marked Exhibit 3, is a certified return mail receipt signed by Glenna Eden on May 6, 2005 acknowledging receipt of second round service. It was undisputed in the proceeding before the district court that the second round service notice including Exhibits A and B, the same filed by the Edens with the district court, was the same notice the Edens received in May 2005. Additionally, counsel for the Edens admitted at the hearing before the SRBA judge that the Edens received adequate notice:

> The court: Are you saying now . . . they didn't get notice or the notice was defective or that it was just confusing? Because I think you go through the history of this and they definitely had notice. You know, the question is how they acted upon that notice.
> …
> Ms. Hofstetter: We agree they received [notice]. We're not challenging the content of the second round service and it's [sic] adequacy."

Not only was it uncontested before the district court that the Edens received second round service notice with Exhibits A and B attached, but the Edens introduced those documents into evidence. As a result, the district court did not err when it determined "in early May 2005, the [Edens] received second round service notice of the commencement of the SRBA." This factual finding is supported in the record and is not clearly erroneous.

The court found that the Edens were adequately informed their water right was unclaimed. As a matter of law this finding supports the court's legal conclusion that the Edens were provided notice and that they failed to exercise their rights pursuant to that notice. Thus, the district court did not err in denying the Edens' motion for relief under Idaho Rule of Civil Procedure 60(b)(4).

10

2. <u>The evidence within the record is adequate to support the court's findings that Edens received adequate second round service.</u>

The Edens attack the validity of the *Final Unified Decree* and the *Closure Order* on the basis that an affidavit filed in the SRBA main case did not include an attached exhibit which supported the SRBA court's factual finding that the Edens received second round service notice. While those facts as now alleged are true, they are of no benefit to the Edens.

The record on appeal includes two copies of an affidavit drafted by Danni M. Smith: one from the SRBA subcase 37-864, which was before the district court when it ruled on the Edens' motions, and another from the SRBA main case file that was not before the district court when it ruled on the Edens' motions. The Smith Affidavit in the SRBA subcase is complete, including the information referenced as Exhibits A and B. The Smith Affidavit in the SRBA main case file is missing Exhibit A, the commencement notice. The mailing list is present, although it is not marked as Exhibit B. With the exceptions of the missing commencement notice and the unlabeled mailing list, both Smith Affidavits are identical; both state that "A Second Round Service of Commencement notice for Basin 37, Part 1 was prepared pursuant to Idaho Code § 42-1408(4) and is attached hereto as <u>Exhibit A</u> and incorporated by this reference." (emphasis in original). Additionally, both Smith Affidavits contain the mailing list, referenced as "<u>Exhibit B</u>." (emphasis in original).

As an initial point, the Edens raise this issue for the first time on appeal. Their rationale for doing so is that the erroneous affidavit was not a part of the record before the court below and therefore they were unaware of this claim until the record was prepared for appeal. "The appellate courts of this state ordinarily will not address an issue that was not preserved for appeal through an objection in the trial court," *Mintun v. State*, 144 Idaho 656, 661, 168 P.3d 40, 45 (Ct. App. 2007), or "an adverse ruling which forms the basis for an assignment of error," *Idaho Power Co. v. Idaho Dep't of Water Res.*, 151 Idaho 266, 279, 255 P.3d 1152, 1165 (2011). However, given the incomplete affidavit was not before the SRBA court, coupled with the expansive language of I.R.C.P. 52(a)(1) that "[a] party may raise the question of the sufficiency of the evidence to support the findings whether or not the party raising the question has made an objection to the findings, . . ." this Court will address this issue on appeal.

Idaho Code section 42-1408(5) requires that "The director shall file with the district court such proof of service as may be required to demonstrate compliance with the above

11

requirements." The full and complete affidavit was filed in the subcase involving these parties. The affidavit so filed establishes that "proof of service" was made on the Edens and it demonstrates "compliance with the . . . requirements" of the statute. The fact that the attached "Exhibit A" was lost in transmission when IDWR filed a copy in the main case does not change the fact that the affidavit utilized by the Edens in the trial court establishes that statutory notice was sufficient. Any error in transmitting a copy of the affidavit from IDWR to the SRBA district court did not affect the notice served on the Edens and is inconsequential in determining whether the Edens received due process.

The Edens also argue that the form of the affidavit filed in the subcase was erroneous because the Exhibits themselves were not labeled. This argument is likewise unavailing. While the individual exhibits were not labeled, the nature of the exhibits are plain from their description in the body of the affidavit. Failure to label the exhibits is inconsequential.

The bottom line here is that the Edens themselves were the beneficiaries of full and complete notice. They argued the same in their motion before the SRBA court: "Without a response, the Edens believed IDWR had accepted their submission and that it was adequate. . . . *This belief was reasonable in view of their receipt of the Second Round Service Notice. . . .*" Transcript of Hearing before SRBA Judge (emphasis added).

As noted above, procedural due process is not a rigid concept. "Rather, it 'is a flexible concept calling for such procedural protections as are warranted by the particular situation.' " *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (quoting *City of Boise v. Industrial Comm'n,* 129 Idaho 906, 910, 935 P.2d 169, 173 (1997)). Based upon these factors, the SRBA court did not err in finding that "in early May 2005, the [Edens] received second round service notice of the commencement of the SRBA." The record is sufficient to support this finding.

**B.** **The district court properly ruled that due process does not require that the Edens be personally served with notice of the *Closure Order* pursuant to Idaho Rule of Civil Procedure 55(b)(2).**

The Edens further argue that their right to procedural due process was violated by entry of the *Closure Order* in this case. Pursuant to Idaho Rule of Civil Procedure 60(b)(4) they argue that the district court should have set aside the Partial Decree of Disallowal of Water Right No.

12

37-864 because they were not personally served with the required notice of default pursuant to Idaho Rule of Civil Procedure 55(b)(2). We disagree.

"This Court has long accepted that water rights adjudications present unique circumstances, often requiring a departure from established rules of procedure." *Basin-Wide Issue 3*, 128 Idaho at 254, 912 P.2d at 622. This Court has previously held that the notice procedures utilized in the SRBA meet constitutional due process requirements. *Lu Ranching*, 138 Idaho at 608–610, 67 P.3d at 87–89. "Any person who fails to submit a required notice of claim shall be deemed to have been constructively served with notice of general adjudication by publication and mailing as required by section 42-1408, Idaho Code." I.C. § 42-1409(5).

The Edens argued below, and they continue to argue before this Court, that the second round service notice they received confused them and led them down the wrong path. They contend that by sending back some unknown papers to IDWR they put everyone on notice that they had filed a claim. As an extension, they argue that they had "appeared" in the SRBA and were therefore entitled to 3-days' notice pursuant to Rule 55(b)(2) before the entry of a default judgment.

A default judgment is "[a] judgment entered against a defendant who has failed to plead or otherwise defend against the plaintiff's claim. . . ." Black's Law Dictionary, 428 (7th ed. 1999). The state of Idaho made no claim against Water Right 37-864 in this case. Rather, the Edens lost that right by operation of statute.

We hold that the SRBA court's disallowal of an unclaimed water right was not entered pursuant to Rule 55 and it is not a default judgment. Rather, the disallowal is a statutory action which results in the water right being lost. *See* I.C. section 42-1408(1)(c) ("failure to file a required notice of claim will result in a court determination that no water right exists for the use of water for which the required notice of claim was not filed."); *cf.* I.C. section 42-1420 ("the general adjudication shall be conclusive as to the nature and extent of all water rights in the adjudicated water system."). As such, the default judgment notice provisions of Rule 55(b)(2) do not apply. The SRBA court ruled properly in failing to apply Rule 55(b)(2) to the circumstances of this case.

C. **The district court did not err when it held that the Partial Decree of Disallowal would not be set aside under Idaho Rule of Civil Procedure 60(b)(6) because "unique and compelling" circumstances did not exist.**

The Edens argue that their good faith attempt to file a notice of claim for Water Right No. 37-864 and their failure to receive the May 19, 2005 IDWR response constitute "unique and compelling" circumstances justifying relief under Idaho Rule of Civil Procedure 60(b)(6). The Edens maintain other "unique and compelling circumstances" provide additional support for their contention, such as the Watermaster's affidavit that existing water users would not be prejudiced, and the Edens' senior water right in No. 37-864 was decreed in 1918 with a priority date of 1896. Finally, the Edens claim it would be an injustice if this Court denies the relief they seek pursuant to Rule 60(b)(6).

1. <u>The district court correctly held that unique and compelling circumstances under Idaho Rule of Civil Procedure 60(b)(6) did not exist to set aside the Partial Decree.</u>

Under Idaho Rule of Civil Procedure 60(b)(6), as it was in effect during 2004–2014, a court could relieve a party from a final judgment, order, or proceeding for "any . . . reason justifying relief from the operation of the judgment." "We have recognized that relief under Rule 60(b)(6) may be appropriate where the district court granted relief that is inconsistent with the pleadings and evidence in the case or is beyond what was sought in the complaint." *Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 380–81, 234 P.3d 699, 704–05 (2010). "An aggrieved party may obtain relief from a final judgment by making a motion to the trial court under I.R.C.P. 60(b). . . ." *Miller v. Haller*, 129 Idaho 345, 348, 924 P.2d 607, 610 (1996). "[A]lthough the court is vested with broad discretion in determining whether to grant or deny a Rule 60(b) motion, its discretion is limited and may be granted only on a showing of unique and compelling circumstances justifying relief." *Id.* (internal quotations and citation omitted). Accordingly, this Court has infrequently granted relief under Rule 60(b)(6). *Berg v. Kendall*, 147 Idaho 571, 578, 212 P.3d 1001, 1008 (2009).

The district court did not abuse its discretion when it held the Edens are not entitled to relief under Rule 60(b)(6). Here, the Edens claim that they mistakenly believed they had filed a claim in the SRBA because they enclosed unknown documents with their change of address letter. Whether this was a mistake, inadvertence, or neglect on their part, the Edens' attempt to file a claim did not comply with the statutory requirements, nor did the Edens ever follow up or pursue their alleged claim until they were notified by Big Wood Canal Company in 2015 that their water right was disallowed.

14

Because the Edens filed their motions well after the *Closure Order* was issued, they could not timely file a Rule 60(b)(1) motion. *See* I.R.C.P. 60(c)(1). This Court has held that "60(b)(1) and 60(b)(6) are mutually exclusive provisions, such that a ground for relief asserted, falling fairly under 60(b)(1), cannot be granted under 60(b)(6)." *Eby v. State*, 148 Idaho 731, 736, 228 P.3d 998, 1003 (2010) (internal quotations and citation omitted). This case presents exactly that scenario.

The Edens received the same notice as all other potential claimants in the SRBA. Despite having received first and second round notice, which instructed the Edens how to properly file a claim, they failed to follow the statutorily mandated process. Additionally, there is no indication that the Edens took any steps to protect their interest in Water Right No. 37-864 in between the time they allegedly sent documentation to IDWR and the time they filed their motions with the district court, nearly eleven years later. The Edens' motion, while self-described as a Rule 60(b)(6) motion was, for all intents and purposes, a motion based upon a claim of mistake, surprise, or excusable neglect under Rule 60(b)(1). Edens' failure to take steps to reconcile their mistake from the time of notice in 2005 until the time their water right was discontinued in 2016 precludes them from relief under Rule 60(b)(6).

In addition, the SRBA court was aware of some evidence in the record that granting Edens' relief would have little impact on the other water users in Basin 37. Nevertheless, the court, exercising proper discretion, found other facts were more significant. In particular, as this Court has previously stated, "by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights." *In re Snake River Basin Water Sys.*, 115 Idaho 1, 7, 764 P.2d 78, 84 (1988) (quoting S. Rep. No. 766, 82d Cong., 1st Sess. 2, 4–6 (1951)). Indeed, "[e]ach water rights claim by its very nature raise[s] issues inter se as to all such parties for the determination of one claim necessarily affects the amount available for other claims." *Nevada v. United States*, 463 U.S. 110, 140 (1983) (internal quotations and citation omitted).

In addition to the generally held belief that one right of use affects the rights of all users, IDWR issued a moratorium against the approval of certain new applications in the Snake River Basin 37, Part 1 in 1993. That moratorium is still in place today because of a long-standing water shortage in Basin 37. Thus, to allow the Edens to assert a claim for a water right previously disallowed will prejudice existing water users with rights junior to No. 37-864. For this reason,

"[f]inality in water rights is essential." *State v. Nelson*, 131 Idaho 12, 16, 951 P.2d 943, 947 (1998). In Idaho, "[a] water right is tantamount to a real property right, and is legally protected as such." *Crow v. Carlson*, 107 Idaho 461, 465, 690 P.2d 916, 920 (1984). Therefore, by sitting on their rights, the Edens have failed to show unique and compelling circumstances exist that warrant setting aside the *Final Unified Decree* and the *Closure Order*. As such, the district court did not abuse its discretion by denying the Edens relief under Idaho Rule of Civil Procedure 60(b)(6).

> **D.** **The district court did not err when it denied the Edens' Motion to File a Late Notice of Claim because their motion to set aside the Partial Decree of Disallowal was denied.**

The SRBA court denied the Edens' Motion to File Late Notice of Claim for Water Right No. 37-864 because there were insufficient grounds under Rule 60(b) to set aside the decree. As the court noted: "Since the [Edens] have failed to set forth sufficient grounds under Rule 60(b) to set aside . . . their Motion to File Late Notice of Claim must be denied." The Edens assert that the court erred in this determination, and that if this Court were to find that at least one of the Rule 60(b) grounds for setting aside the decree were satisfied, the court's ruling as to the late notice of claim should also be overturned.

This Court has not found that any of the Rule 60(b) criteria have been established in this case. As was set forth above, the *Final Unified Decree* is "conclusive as to the nature and extent of all water rights with the Snake River Basin within the State of Idaho with a priority date prior to November 19, 1987."; I.C. § 42-1420(1). All prior rights that were required to be claimed in the SRBA were superseded by the *Final Unified Decree*. The *Closure Order* and the *Final Unified Decree* conclusively ruled that Water Right No. 37-864 no longer exists. Thus, in order to file a late notice of claim for that water right, the *Final Unified Decree* and the *Closure Order* would have to be set aside. The significant prejudice and potential undermining of over 158,600 water rights that were timely claimed, adjudicated and decreed supports the SRBA court's discretion in denying the Edens the right to assert a late filed claim.

This is not to say that the harm suffered by the Edens due to this result is not real and unforgiving. But those effects were appropriately weighed in the balance by the SRBA court and found insufficient to merit the relief which the Edens seek. We affirm the court's exercise of discretion in that regard.

16

**E. The state is not entitled to attorney fees on appeal under Idaho Code section 12-121.**

The State seeks costs and attorney fees pursuant to Idaho Code section 12-121 and Idaho Appellate Rules 40 and 41. "An award of attorney fees under Idaho Code section 12-121 is not a matter of right to the prevailing party, but is appropriate only when this Court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Pocatello Hosp., LLC v. Quail Ridge Medical Investor, LLC*, 157 Idaho 732, 742, 339 P.3d 1136, 1146 (2014) (internal quotations and citation omitted); I.R.C.P. 54(e)(1). Moreover, "[w]hen deciding whether attorney fees should be awarded under I.C. § 12–121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the trial court incorrectly applied well-established law." *Fuquay v. Low*, 162 Idaho 373, ___, 397 P.3d 1132, 1138 (2017) (internal quotations and citation omitted). Generally, "attorney fees will not be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Id.* (internal quotations and citation omitted). Finally, Idaho Appellate Rule 40 provides this Court with authority to award costs to the "prevailing party."

Because the State is the prevailing party, costs on appeal pursuant to Idaho Appellate Rule 40 are merited; however, the State is not entitled to attorney fees on appeal. Such an award is proper only if all of the Edens' issues were pursued frivolously or without foundation. Indeed, "[i]f there is a legitimate, triable issue of fact or a legitimate issue of law, attorney fees may not be awarded under [Idaho Code section 12-121] even though the losing party has asserted [some] factual or legal claims that are frivolous, unreasonable, or without foundation." *Telford Lands LLC v. Cain*, 154 Idaho 981, 993, 303 P.3d 1237, 1249 (2013) (internal quotations and citation omitted).

Here, analyzing each issue individually, the Edens did not pursue this appeal without foundation. First, the Edens raised the issue of statutory interpretation on appeal, particularly what in Idaho Code section 42-1408(5) "demonstrate[s] compliance with [second round service] requirements." Second, the Edens raise the relationship between SRBA A.O.1 and the Idaho

17

Rules of Civil Procedure, especially where personal service is at issue under Rule 55(b)(2). Third, the Edens' contention that unique and compelling circumstances exist to justify relief is an argument that requires careful review of the pleadings and evidence. *Dawson*, 149 Idaho at 380, 234 P.3d at 704. Finally, this Court was not asked to simply "re-weigh the evidence presented to the district court." *State v. Windom*, 150 Idaho 873, 879, 253 P.3d 310, 316 (2010). The Edens' case presents evidence that existing Idaho law was violated and offered good faith arguments. The State failed to establish, and the record does not indicate, that the Edens brought or pursued this appeal in an unreasonable or frivolous manner. Thus, under the authority of Idaho Code section 12-121, attorney fees are not warranted.

Accordingly, we award costs to the State on appeal under Idaho Appellate Rule 40, but not attorney fees under Idaho Code section 12-121.

## V. CONCLUSION

For the reasons set forth above, the decision of the SRBA court is in all respects affirmed.

Chief Justice BURDICK, Justices JONES, HORTON and BRODY, CONCUR.