# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48954

SCOTT PINKHAM, an individual; and NATALIE PINKHAM, an individual,

    Plaintiff-Counterdefendants-Respondents,

v.

DAVID PLATE, an individual; THREE PEAKS HOMES, LLC, an Idaho limited liability company; REBECCAH JENSEN, an individual,

    Defendants-Counterclaimants-Appellants,

and

LEGACY MANAGEMENT ENTERPRISES, LLC, a Wyoming limited liability company,

    Defendants-Counterclaimants,

and

DOUG HALL, an individual; REBEL CREW CONSTRUCTION, LLC, a Wyoming limited liability company,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, August 2022 Term

Opinion filed: November 28, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The judgment of the district court is <u>affirmed in part</u> and <u>reversed in part</u>.

Hawley, Troxell, Ennis & Hawley, LLP, Pocatello, for Appellants. Jetta H. Mathews argued.

Parsons, Behle & Latimer, Idaho Falls, for Respondents. Jon A. Stenquist argued.

---

1

MOELLER, Justice.

This appeal concerns a default judgment awarded to Scott and Natalie Pinkham ("the Pinkhams") against David Plate, Rebeccah Jensen, and their company, Three Peaks Homes, LLC (collectively "Appellants"). When Appellants' attorney withdrew in the middle of the case, Appellants failed to timely designate new counsel as required by Idaho Rule of Civil Procedure 11.3. Accordingly, a default was entered by the district court. Later, the district court, using a form prepared by the Pinkhams' attorney, awarded the Pinkhams a default judgment of almost $650,000 without (1) the amount of damages being specified in the Pinkhams' complaint or (2) the presentation of any proof of the amount of damages the Pinkhams were claiming. Appellants later retained an attorney and attempted to set aside the default and the default judgment, asserting that both had been improperly entered. The district court denied both requests.

Appellants now appeal from the district court's denial of their motion to set aside the entry of default and default judgment against them. For the reasons stated below, we affirm the district court's judgment in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Pinkhams signed a contract with Three Peaks Homes, LLC, a company owned by Plate and Jensen, for the construction of a custom home at the fixed price of $1,000,000. When construction did not go as planned, the Pinkhams terminated the contract before the home was completed. Three Peaks subsequently filed two $600,000 mechanics' liens against the Pinkhams' home. The Pinkhams then filed an unverified complaint against David Plate, Rebeccah Jensen, Three Peaks, Rebel Crew Construction, LLC, and Legacy Management Enterprises, LLC, asserting several causes of action: (1) breach of contract; (2) breach of implied warranty of workmanship; (3) fraud; (4) replevin; (5); trespass; (6) slander of title; (7) quiet title; and (8) unjust enrichment. The Pinkhams later filed an amended complaint—also unverified—that added claims seeking injunctive relief and one to pierce the corporate veil. Neither the complaint nor the amended complaint specified the amount of monetary damages sought, but instead prayed for "an award of damages to Plaintiffs in [sic] amount to be determined at trial." Additionally, the Pinkhams filed notices of lis pendens against two properties owned by Legacy on the basis that Three Peaks used materials and labor, paid for by the Pinkhams, in projects on those properties.

Plate and Jensen appear to own both Three Peaks and Legacy, although the record is unclear as to their exact ownership interests or the management structure of those businesses. Plate,

2

Jensen, Three Peaks, and Legacy were initially represented by the same attorney, Lance Schuster. Plate, Jensen, and Three Peaks filed a combined answer and counterclaim, while Legacy filed a separate answer and counterclaim. Three Peaks asserted that the Pinkhams had breached the construction contract and sought to foreclose on their liens against the Pinkhams' home. Legacy's counterclaim asserted claims for abuse of process and slander of title, and sought to have the lis pendens removed from the public record.

The Pinkhams and Legacy filed cross motions for partial summary judgment. The Pinkhams' motion sought the removal of Three Peaks' mechanics' liens filed against the Pinkhams' home. A declaration from Scott Pinkham supporting the motion was filed, which included an attachment showing all the checks and bank draws used to pay for Three Peaks' work, totaling $648,296.02. The summary judgment decision is not included in the record on appeal, but based on other parts of the record, it appears the district court denied the Pinkhams' motion.

On November 13, 2020, Schuster filed a motion for leave to withdraw as counsel for Plate, Jensen, Three Peaks, and Legacy under Rule 11.3(b). He averred that his clients had failed to communicate or provide requested information and that neither Three Peaks nor Legacy had met their financial obligations to him. In his motion, Schuster provided Appellants' last known addresses. Schuster provided the same address for all four parties.

On December 10, 2020, the district court entered an order granting Schuster's motion for leave to withdraw. The order directed Appellants to "appoint another attorney to appear on their behalf, or to appear in person by filing a written notice with the [c]ourt stating how they will represent themselves" within twenty-one days of service of the order. The order also required that Schuster serve Appellants with a copy of the order by certified mail, at the Appellants' last known address. Finally, the order stated,

> should [Appellants] fail to file and serve a written appearance in this action either in person or through a newly appointed attorney within twenty-one (21) days of the date of service of this Order, such failure shall be sufficient grounds for entry of judgment against them, without further notice, or dismissal of this action.

That same day, the court clerk served a copy of the withdrawal order on Appellants via first class mail to the last known address provided by Schuster. On December 11, Schuster served two copies of the order on Appellants, one via certified mail and the other via first class mail, to the same last known address.

On December 23, 2020, the district court received a letter from Jensen and Plate that stated,

> Three Peaks Homes, David Plate and Rebeccah Jensen have heard that our lawyer will no longer be representing us. We haven't received any official notification of this as of yet. We are requesting additional time to find representation as we haven't been able to find any due to the holidays.

The return address on the letter was the same last known address provided by Schuster, and the same address to which the clerk and Schuster had mailed copies of the order granting the motion to withdraw. The district court did not take any action in response to Appellants' letter.

On January 6, 2021, the Pinkhams moved for the entry of default, a default judgment against Appellants, and the dismissal of Appellants' counterclaims with prejudice. The Pinkhams asserted a default judgment was proper under Rule 11.3 because Appellants failed to file "a notice of appearance of a new attorney or a notice of self-representation . . . within 21 days" of service of the district court's December 10 order. The Pinkhams acknowledged Appellants' December 23 letter but argued it did not constitute a written appearance as required by Rule 11.3. The motion stated it was supported by Schuster's declaration confirming he served two copies of the order on the Appellants, and "the pleadings and records on file herein." The Pinkhams' counsel served the motion on Appellants on January 6, 2021, via first class mail to the last known address identified by Schuster.

From the record, it appears that the Pinkhams also submitted a proposed order granting their motion and a proposed default judgment to the district court. The record does not indicate whether the Pinkhams served copies of the proposed order and judgment on Appellants. Neither the Pinkhams' motion nor their memorandum in support of the motion identified the amount of damages sought. Notably, the Pinkhams submitted no sworn statements or documentary evidence directly supporting the damage award included in the proposed default judgment. Nevertheless, the proposed default judgment included an award of damages in the amount of $647,331.95.

Five days later, on January 11, 2021, the district court granted the Pinkhams' motion without a hearing. The district court found that Appellants had not filed a notice of appearance or self-representation as required by Rule 11.3 and the district court's December 10, 2020, order. The district court entered default against Appellants and ordered that judgment be entered by default against Appellants "in accordance with the relief sought in Plaintiffs' Amended Complaint, as set forth in the Judgment." The district court signed the proposed order and default judgment submitted by the Pinkhams without making any changes to either document. The judgment stated:

> Defendants Three Peaks Homes LLC, David Plate, Rebecca [sic] Jensen, Legacy Management Enterprises, LLC[,] and Rebel Crew Construction, LLC[,] are

4

jointly and severally liable to the Plaintiffs Scott Pinkham and Natalie Pinkham, husband and wife, in the amount of $647,331.95.

The district court did not issue a separate decision explaining the basis for its damage award. The deputy court clerk served copies of the default order and default judgment on Appellants at their last known address.

Appellants later secured new counsel and on April 5, 2021, filed a motion to set aside the default and default judgment under Idaho Rule of Civil Procedure 60(b)(1), (4), and (6). They argued that the default and default judgment should be set aside based on excusable neglect or mistake as they (1) requested an extension of time, (2) did not have notice of the twenty-one-day deadline to inform the district court how they would proceed, and (3) could not find an attorney due to the holidays and COVID-19 pandemic. Appellants further argued that the default judgment was void because they had not received proper notice and an opportunity to be heard prior to the judgment being entered against them.

The district court denied Appellants' motion. It concluded that Appellants had not demonstrated good cause to set aside the entry of default because Appellants received two copies of the order granting the withdrawal motion and failed to file a notice of appearance of a new attorney or notice of self-representation within the required timeframe under Rule 11.3. The district court determined that Appellants' December 23 letter did not demonstrate a "sufficient reason to set aside the default judgment because of excusable neglect or mistake." Additionally, the court concluded Appellants had been afforded due process because no hearing was required to determine damages in this case and Appellants received adequate notice at all relevant points in the proceedings. Appellants timely appealed the district court's decision.

## II. STANDARDS OF REVIEW

We review a district court's decision denying a motion to set aside an entry of default for an abuse of discretion. *AgStar Fin. Servs., ACA v. Gordon Paving Co.*, 161 Idaho 817, 819, 391 P.3d 1287, 1289 (2017); *Bach v. Miller*, 148 Idaho 549, 552, 224 P.3d 1138, 1141 (2010). To determine whether a court has abused its discretion, this Court asks "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

5

In determining the appropriate standard of review for a decision denying a motion for relief under Rule 60(b), this Court must consider which subsection of the rule is being invoked because each subsection invokes a different standard of review. *In re SRBA Case No. 39576 Subcase No. 37-00864*, 164 Idaho 241, 248, 429 P.3d 129, 136 (2018) ("*In re SRBA Case No. 39576*"). These decisions often involve questions of fact, which are generally reviewed for an abuse of discretion. *AgStar Fin. Servs.*, 161 Idaho at 819, 391 P.3d at 1289; *Bach*, 148 Idaho at 552, 224 P.3d at 1141. However, we exercise de novo review over questions of law, including when a motion is brought pursuant to Rule 60(b)(4), which concerns whether a judgment is void. *In re SRBA Case No. 39576*, 164 Idaho at 248, 429 P.3d at 136 (citation omitted). The interpretation of a court rule is also a question of law that this Court freely reviews. *E. Idaho Econ. Dev. Council v. Lockwood Packaging Corp. Idaho*, 139 Idaho 492, 495, 80 P.3d 1093, 1096 (2003).

### III. ANALYSIS

There are two separate steps in concluding a case by default: the entry of default and the entry of the default judgment. *Martinez v. Carrasco*, 162 Idaho 336, 340–41, 396 P.3d 1218, 1222–23 (2017). An entry of default is essentially a judicial finding that the conditions for default have been satisfied, while a default judgment grants the non-defaulting party the relief to which it is entitled. Thus, a default, unlike a default judgment, does not contain any conclusions about what judgment should be rendered. "It is well understood that factual allegations contained in a complaint are deemed admitted when a defendant defaults." *CMJ Props., LLC v. JP Morgan Chase Bank, N.A.*, 162 Idaho 861, 863, 406 P.3d 873, 875 (2017) (citing *Holladay v. Lindsay*, 143 Idaho 767, 772, 152 P.3d 638, 643 (Ct. App. 2006)). Thus, "if the complaint sufficiently alleges facts upon which the plaintiff would be entitled to damages, the plaintiff may recover those damages without proving any additional facts." *Holladay*, 143 Idaho at 772, 152 P.3d at 643.

To set aside a default judgment, the moving party usually must move to first set aside the entry of default. *Martinez*, 162 Idaho at 341–42, 396 P.3d at 1223–24. This is because a default generally cuts the defendant off from raising any further opposition or objection to the relief which the plaintiff's complaint shows he is entitled to demand. *See id.* at 342, 396 P.3d at 1224. As we have explained, "[a] defendant against whom default is entered 'is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action.' " *Id.* (quoting *Title Ins. & Tr. Co. v. King Land & Improvement Co.*, 120 P. 1066, 1067 (Cal. 1912)).

In this case, Appellants moved to set aside both the entry of default and the default judgment. Therefore, we begin our analysis by reviewing whether the district court erred when it refused to set aside the entry of default against the Appellants.

**A. The district court did not err in denying the motion to set aside the entry of default.**

Appellants first contend that the district court erred in refusing to set aside the entry of default because it should not have been entered in the first place. They argue that Rule 11.3(c)(3) provides that a district court "may" enter a default judgment against a party if he fails to file a notice of appearance within twenty-one days. Appellants maintain that because the word "may" is inherently discretionary, the district court was not required to enter default against them. They further assert that the district court abused its discretion in denying their motion because the December 23 letter was sufficient to constitute a notice of self-representation under Rule 11.3. In the alternative, Appellants argue that the letter set forth a sufficient basis to grant them additional time to obtain new counsel. Appellants also contend that the district court erred because the default was entered in violation of Idaho Rule of Civil Procedure 55(a)(1), which required they be provided three days' advance notice of the application for default.

1. *The "good cause" standard governed the district court's consideration of Appellants' motion to set aside the entry of default.*

We first address the legal standard that governed the district court's consideration of Appellants' motion. The district court analyzed Appellants' motion under Rule 55(c), which directs that "[t]he court may set aside an entry of default for good cause[.]" For reasons we explain later in this opinion, we conclude that Rule 11.3 generally governs the entry of a default judgment (and by extension the entry of default) following the withdrawal of an attorney. However, when considering a motion to set aside a default entered under Rule 11.3, we see no reason to depart from the "good cause" standard contained in Rule 55(c), which Idaho courts have consistently applied when considering motions to set aside a default. *See Martinez*, 162 Idaho at 341, 396 P.3d at 1223. Thus, the district court considered the motion under the correct standard.

2. *The district court did not abuse its discretion in concluding that Appellants failed to demonstrate good cause to set aside the entry of default.*

The burden fell on Appellants to demonstrate good cause to set aside the entry of default. Plaintiffs first argue that good cause exists because their December 23 letter should have been construed as a notice of self-representation for purposes of Rule 11.3. The Pinkhams assert that the district court correctly determined that the letter did not constitute such a notice.

7

We conclude that the district court did not abuse its discretion in rejecting Appellants' argument concerning the December 23 letter. The district court recognized the issue as one within its discretion, considered Appellants' argument, and explained that their letter did not constitute good cause to set aside the entry of default because it failed to indicate that Appellants intended to represent themselves. The district court's decision was consistent with the language of Rule 11.3 and, therefore, it did not err when it determined that the December 23 letter was insufficient to constitute a notice of self-representation.

For many of the same reasons, the district court also did not abuse its discretion by declining to grant Appellants additional time to find counsel. While Appellants' letter does include a request for additional time, Appellants only mentioned needing more time "due to the holidays." They provided no indication of how much time they needed or what efforts had been made to secure new counsel up to that point. We are unpersuaded that a mere request for additional time to find counsel, coupled with a conclusory statement that they "haven't been able to find any due to the holidays[,]" automatically provides good cause to set aside the entry of default.

We similarly reject Appellants' argument that the district court should have granted them additional time to find new counsel due to the COVID-19 pandemic. We first note that Appellants did not mention this ground in their December 23 letter to the district court. The impact of the pandemic was not raised as an issue until they filed a motion to set aside the default and default judgment. However, even if they had, Appellants' letter failed to establish what efforts had been made to secure an attorney and how much more time would be needed to obtain new counsel. While we do not foreclose the possibility that COVID-19 could have had some bearing on attorney availability during this time period, Appellants' belated and generalized COVID-19 argument failed to provide good cause to set aside the entry of default.

Appellants next contend that good cause existed to set aside the default because they did not receive the notice specified in Rule 55(a)(1). Appellants argue that the notice procedures in Rule 55 must be followed even where the default judgment is being entered pursuant to Rule 11.3. In contrast, the Pinkhams assert that Rule 11.3 provides an independent basis upon which a default judgment may be entered and served, which is not subject to the requirements in Rule 55.

This Court's approach to interpreting court rules is similar to its approach to interpreting statutes. *Valentine v. Valentine*, 169 Idaho 621, 627, 500 P.3d 514, 520 (2021). The analysis begins with the plain language of the rule, read according to its "plain, obvious and rational meaning." *Id.*

8

(quoting *Kelly v. Kelly*, 165 Idaho 716, 724, 451 P.3d 429, 437 (2019)). However, since this Court authors the rules, it is "not constrained by the constitutional separation of powers" that require adherence to the plain language of a statute regardless of the result. *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). The Idaho Rules of Civil Procedure are "construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(b).

Rule 11.3 governs the substitution and withdrawal of attorneys. If an attorney is granted leave to withdraw, the order permitting the withdrawal must be served on the party represented by the withdrawing attorney. I.R.C.P. 11.3(c)(1). The order permitting withdrawal must:

> notify the party whose attorney is withdrawing that the party's claims will be subject to dismissal with prejudice or default judgment may be entered against the party if the party does not, within 21 days after service of the order, either appoint another attorney to appear or file notice with the court that the party will be self-represented in the action.

*Id.* The rule also sets forth the potential consequences for a party if it fails to appear or file a notice of self-representation: "If a notice of appearance of a new attorney or a notice of self-representation is not filed within 21 days after service of the order allowing withdrawal, the court may dismiss with prejudice any claims of the party or may enter a default judgment against the party." I.R.C.P. 11.3(c)(3).

Rule 55, in turn, governs the entry of default and a default judgment where a party has failed to appear or has appeared but failed to defend the case. Rule 55(a)(1) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the court must order entry of the party's default." If the party has appeared in the action, however, "that party must be served with 3 days' written notice of the application for entry of default before default may be entered." I.R.C.P. 55(a)(1). Further, Rule 55(b)(2) states that, "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application [for entry of default judgment] at least 3 days before the hearing."

In sum, Rules 11.3 and 55 govern the entry of a default judgment in separate and distinct situations. Rule 11.3 applies when counsel has formally withdrawn from a matter and the party has failed to provide the court with a notice of appearance by a new attorney or a notice of self-representation. In contrast, Rule 55 applies when a party: (1) has failed to appear in a matter, or

9

(2) has appeared, but failed to plead or otherwise defend in a matter. In this case, because Appellants had appeared and defended their interests prior to their attorney's motion to withdraw, Rule 55 did not apply. Instead, Rule 11.3 controlled because it was the more specific rule in this instance. *See In re Driver's License*, 124 Idaho 839, 842, 864 P.2d 1126, 1129 (1993) ("A specific statute, and by analogy a specific rule of civil or criminal procedure, controls over a more general statute when there is any conflict between the two or when the general statute is vague or ambiguous.").

This conclusion is consistent with our prior decisions. In *Sherwood & Roberts, Inc. v. Riplinger*, this Court held that the predecessor to Rule 11.3 was the more specific rule; therefore, it governed the manner in which the entry of default should be handled. 103 Idaho 535, 538, 650 P.2d 677, 680 (1982). In that case, the appellant's attorney was granted leave to withdraw under former Rule 11(b)(3), the predecessor to the current version of Rule 11.3. *Id.* at 536–37, 650 P.2d at 678–79. The appellant failed to file a notice of appearance or appear through counsel within the timeframe required by Rule 11(b)(3), and the district court entered default and a default judgment against him without providing further notice. *Id.* at 537, 650 P.2d at 679. On appeal, the appellant argued he was entitled to the three-day notice provided under Rule 55(b)(2). *Id.* However, this Court rejected the argument, concluding that "[a]ny conflict between [Rules] 11(b)(3) and 55(b)(2) in this matter must be resolved in favor of Rule 11(b)(3), since it is both the more specific and the more recent rule." *Id.* at 538, 650 P.2d at 680 (footnote and citation omitted).

Just like the appellant in *Sherwood*, Appellants here argue that they were entitled to the three-day notice provided in Rule 55. Appellants attempt to distinguish *Sherwood* based on a recent modification to Rule 11.3. This modification removed the phrase, "without further notice" from the language of the rule. Appellants assert that the removal of this phrase shows that notice pursuant to Rule 55 is now required in order to strictly comply with the rule, effectively rendering *Sherwood* inapt.

We note that this Court has amended Rule 11.3 several times since it was originally adopted. When we decided *Sherwood*, the rule stated that if a party whose attorney had been granted leave to withdraw failed to appear in person or through newly appointed counsel within twenty days, "such failure shall be sufficient ground for entry of default against such party or dismissal of the action of such party, with prejudice, without further notice, which shall be stated in the order of the court." *Sherwood*, 103 Idaho at 536 n.3, 650 P.2d at 678 n.3. Despite the rule's

10

language specifically allowing for the entry of *default*, this Court interpreted the rule to also allow for the entry of a *default judgment* without further notice. *Id.* at 538 n.6, 650 P.2d at 680 n.6 ("In the context of this particular rule, reference to entry of 'default' includes entry of 'default judgment.' "). In the years following *Sherwood*, the language in Rule 11(b)(3) was altered to allow for entry of default and a default judgment without further notice, making it consistent with this Court's decision in *Sherwood*. *See* I.R.C.P. 11(b)(3) (2013).

In 2016, this Court adopted a revised version of the Idaho Rules of Civil Procedure. *See In re: Adoption of Newly Formatted Idaho Rules of Civil Procedure and Idaho Rules on Small Claim Action* (March 1, 2016). The newly adopted rules transferred portions of Rule 11(b)(3) to a new rule, Rule 11.3. The new Rule 11.3 removed language requiring a court's withdrawal order to state that a default judgment may be entered "without further notice." We have been unable to locate any committee minutes that explain the reason for this change. Following the changes, Rule 11.3 now permits courts to enter a default judgment against that party if "a notice of appearance of a new attorney or a notice of self-representation is not filed within 21 days after service of the order allowing withdrawal[.]" The revised rule, like its 2016 predecessor, does not require any additional notice prior to entry of default judgment, nor does it indicate that the notice requirements from Rule 55(a) apply. As a result, regardless of the amendment, both the 2016 version of Rule 11.3 and the current version permit the district court to enter a default judgment against the party without providing additional notice beyond that required to be included in the order of withdrawal. Accordingly, the district court did not err in its entry of default against Appellants.

We hold that the plain language of Rule 11.3 allows for entry of a default judgment, which necessarily includes the entry of default if a party fails to file a notice of appearance or notice of self-representation within the required timeframe. Appellants filed neither and have failed to establish good cause for their failure to do so. Accordingly, we affirm the district court's denial of Appellants' motion to set aside the entry of default.

**B. The entry of default pursuant to Rule 11.3 does not prevent Appellants from challenging the amount of damages awarded or the sufficiency of the evidence supporting the damage award.**

Appellants did not succeed in demonstrating error in the district court's entry of default against them; however, our discussion does not end there. In *Martinez*, this Court concluded it would be ineffectual to set aside a default judgment if the entry of default was not also set aside:

11

A default cuts off the defendant from making any further opposition or objection to the relief *which plaintiff's complaint shows he is entitled to demand.* A defendant against whom a default is entered "is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action." He cannot thereafter, nor until such default is set aside in a proper proceeding, file pleadings, or move for a new trial, or demand notice of subsequent proceedings. "A default confesses all the material facts in the complaint." Consequently, if the judgment were vacated, it would be the duty of the court immediately to render another of like effect, and the defaulting defendants would not be heard for the purpose of interposing any denial or affirmative defense.

162 Idaho at 342, 396 P.3d at 1224 (quoting *Title Ins. & Trust. Co.*, 120 P. at 1067) (emphasis added). We later clarified this holding:

Default does not necessarily cut off a defendant's ability to participate in the litigation altogether. In a tort case, for example, *a defaulting defendant is generally allowed to contest the amount of unliquidated damages. A defaulting defendant can also contest the legal sufficiency of the complaint and its allegations to support a judgment.* A party in default cannot, however, bring an appeal seeking affirmative relief from this Court.

*CMJ Props., LLC*, 162 Idaho at 865, 406 P.3d at 877 (emphasis added, citations omitted).

Our holding in *CMJ* establishes that, despite a default having been granted against them, defaulted parties are still permitted to file a Rule 60(b) motion to set aside the default judgment if the basis for the motion is to contest the amount of damages awarded. Under *CMJ*, Appellants may only challenge the legal sufficiency of the complaint and/or the sufficiency of the evidence supporting the damage award. However, it is important to note that the party against whom default has been entered has effectively conceded to all the material facts in the complaint. *See Martinez*, 162 Idaho at 342, 396 P.3d at 1224. Therefore, to the extent a verified complaint alleges specific facts supporting the amount of damages claimed, the defaulted party would be prevented from challenging those assertions.

In this case, the Pinkhams have not pointed us to, nor have we been able to identify, any allegations in their amended complaint that establish or support the amount of damages awarded in the default judgment. In fact, the amended complaint expressly stated that "the Pinkhams have suffered damages *in an amount to be proven at trial.*" (Emphasis added). Yet, without a trial—or any evidentiary support from the verified complaint or by other sworn statement—the district court awarded the Pinkhams a default judgment in the amount of $647,331.95. Therefore, we will consider Appellants' arguments that the district court erred in denying their Rule 60(b) motion,

but only to the extent their arguments contest the legal sufficiency of the complaint and/or the sufficiency of the evidence supporting the damage award in the default judgment.

## C. Appellants have established a right to relief under Rule 60(b)(4) because the district court erred in awarding damages without any proof.

Appellants assert they are entitled to relief under subsections (1), (4), and (6) of Rule 60(b). In light of our conclusion that Rule 11.3, not Rule 55, governs the entry of the default judgment, we must once again initially address the legal standard that governed the district court's consideration of Appellants' motion to set aside the entry of the default judgment. The district court analyzed Appellants' motion under Rule 60(b). Again, we see no reason to depart from this framework for setting aside a default judgment entered pursuant to Rule 11.3. Thus, Rule 60(b) provides the legal standard for setting aside the default judgment entered here.

Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (4) the judgment is void . . . or (6) any other reason that justifies relief." When moving to set aside a default judgment, the moving party must not only meet the requirements of Rule 60(b), but it must also plead facts which, if established, would constitute a defense to the action. *Idaho State Police ex rel. Russell v. Real Prop. Situated in Cnty. of Cassia*, 144 Idaho 60, 62, 156 P.3d 561, 563 (2007) (citation omitted). "It would be an idle exercise for the court to set aside a default if there is in fact no real justiciable controversy." *Id.* Accordingly, we will consider each of the asserted Rule 60(b) grounds in turn.

### 1. Appellants waived their argument under Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect") because they failed to address it in their opening brief.

Appellants contend that the district court failed to properly consider Idaho's policy disfavoring default in doubtful cases. Appellants assert that the December 23 letter informed the district court that they had not abandoned their defense, they were attempting to retain counsel, and they did not have actual notice of the court's order requiring them to appear or face default. Appellants argue that these facts show that they acted reasonably and are entitled to relief under Rule 60(b)(1).

We decline to consider this argument because Appellants did not raise it in their opening brief on appeal. "We will not consider an issue not 'supported by argument and authority in the opening brief.' " *State v. Tower*, 170 Idaho 272, 276–77, 510 P.3d 625, 629–30 (2022) (quoting

13

*Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)). Therefore, we will deem Appellants' assertions of error under Rule 60(b)(1) as waived.

2. *Appellants have established a right to relief under Rule 60(b)(4) ("the judgment is void").*

On appeal, Appellants focus their Rule 60(b)(4) argument on the notice provisions of Rule 55. They argue that even if a default judgment is entered pursuant to Rule 11.3, the moving party must still comply with the notice provisions set forth in Rule 55. However, we are not persuaded by Appellants' argument that they were entitled to additional notice under Rule 55(b)(2), given our conclusion that Rule 11.3 governs the entry of default and default judgment in this case.

Appellants' other challenge under Rule 60(b)(4) attacks the sufficiency of the evidence supporting the amount of damages awarded in the default judgment. They contend that the district court erred in entering a default judgment without a hearing, without a proper evidentiary basis, and in an amount that exceeded the amount pleaded. We agree that the Appellants are entitled to relief on appeal given the lack of proof in the record justifying the amount awarded in the default judgment.

Rule 60(b)(4) provides that a district court may relieve a party from a final judgment if the judgment is void. However, the circumstances under which such relief may be granted are rare; in the interests of finality, the "concept of void judgment must be narrowly restricted." *Golub v. Kirk-Scott, Ltd.*, 157 Idaho 966, 970, 342 P.3d 893, 897 (2015). "Generally, the Court may declare a judgment void only for defects of personal jurisdiction or subject-matter jurisdiction, or where the 'court's action amounts to a plain usurpation of power constituting a violation of due process.' " *Id.* (quoting *Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009)). We have explained that "if a default judgment exceeds the demand of the complaint, the excess is void" under Rule 60(b)(4). *Id.* (internal quotation marks omitted) (quoting *Hayes v. Towles*, 95 Idaho 208, 211, 506 P.2d 105, 108 (1973)). Additionally, Rule 54 states "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." I.R.C.P. 54(c). To comply with Rule 54(c), the amount awarded will be the amount "actually demanded somewhere in the complaint *when considered in its entirety*," such that the defendant has notice of the amount and "can decide whether the action is worth defending." *Golub*, 157 Idaho at 971, 342 P.3d at 898 (emphasis in original) (quoting *Johnson v. Hartford Ins. Grp.*, 99 Idaho 134, 139, 578 P.2d 676, 681 (1978)). As we concluded in *Golub*, a default judgment that fails to comply with Rule 54(c) may be vacated as void under Rule 60(b)(4). *See id.* Likewise, we have explained that a district

14

court's role is "not simply . . . to rubber stamp the damages asserted by the Plaintiffs." *Garcia v. Absolute Bail Bonds, LLC*, 161 Idaho 616, 621, 389 P.3d 161, 166 (2016).

The Pinkhams argue that a default judgment entered pursuant to Rule 11.3 need not comply with "any other rule before entering a default judgment," including the requirement in Rule 54(c) that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." I.R.C.P. 54(c). We have already held that Rule 11.3, as the more specific rule, governs the entry of a default judgment in this case. However, we do not agree with the Pinkhams that Rule 11.3's governance over the *entry of default* somehow obviates the need to follow the procedures set forth in Rules 54 and 55 for *determining the amount* of the default judgment. The Idaho Rules of Civil Procedure establish that if the damages sought exceed the amount pleaded in the complaint, they must be supported by either submitting an affidavit under Rule 55(b)(1) or by conducting an evidentiary hearing under Rule 55(b)(2). *See* I.R.C.P. 55(b) ("Entering a Default Judgment"); *Compare* I.R.C.P. 55(b)(1) ("*For Sum Certain*"), *with* I.R.C.P. 55(b)(2) ("*Other Cases*"). Likewise, Rule 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." This language is also reflected in Idaho Code section 5-336, which provides:

> *A judgment by default shall not be different in kind from or exceed in the amount that prayed for in the demand for judgment.* Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleading. Provided, however, if a judgment by default is entered in any claim for relief for personal injury or death pursuant to Idaho [R]ule of [C]ivil [P]rocedure 8(a)(1), after default is entered, the court shall conduct such hearings or order such reference as it deems necessary and proper pursuant to Idaho [R]ule of [C]ivil [P]rocedure 55(b)(2) to determine the appropriate amount of damages.

(Emphasis added). While the third sentence is largely inapplicable since this case does not concern "personal injury or death," the first two sentences are instructive. The first sentence sets forth the general rule that the damages awarded in a default judgment must not be "different in kind from or exceed in the amount" that is sought in the complaint. The second sentence applies to cases in which no default has been entered and provides that damages are awarded based on "entitlement"—*i.e.*, liability *and* some form of proof must be provided. Applying a plain reading of the statute and the pertinent rules leads to the simple conclusion that before plaintiffs are

15

awarded a default judgment for a specific sum in excess of the amount set forth in the complaint, they must substantiate their claim.

Here, the district court offered no explanation for its calculation of damages when it granted the Pinkhams a default judgment for $647,331.95. The judgment appears to have been drafted by the Pinkhams' counsel and signed by the district court without alteration. In its later memorandum decision denying Appellants' motion to set aside the default judgment, the district court explained that it relied on Mr. Pinkham's declaration submitted in support of his motion for partial summary judgment seeking the removal of the liens on the Pinkhams' property. From this declaration, the court "determined a basis for calculating damages, determined an adequate amount of damages, and effectuated a judgment" without conducting further inquiry. However, not only did the Pinkhams fail to include a specific request for damages in their summary judgment motion, but they also failed to provide documents substantiating the monetary amount sought in the proposed default judgment. The Pinkhams also failed to cite to the very declaration that the district court relied upon sua sponte when computing the amount awarded.

This is troubling for several reasons. First, Mr. Pinkham's declaration was not submitted to prove the net damages that should be awarded to the Pinkhams. Instead, it was submitted in support of the Pinkhams' first motion for summary judgment, which only addressed removal of the liens that Appellants recorded on the Pinkhams' property and the lis pendens filed on Legacy's property. A review of the motion and declaration demonstrates that the documents were intended to prove the Pinkhams did not owe money to Appellants and, therefore, the liens against the Pinkhams' real property and the claims related to the liens were improper.

Second, Appellants also call into question whether all items in the declaration relied on by the district court were even recoverable. For example, Mr. Pinkham's declaration included expenditures for services that were unrelated to Appellants' alleged breach, such as HOA fees, design services, and various sub-contractor services that Appellants argue were provided to the Pinkhams. As Appellants note, "expenditures" does not represent the measure of damages for the causes of action set forth in the Pinkhams' amended complaint. *E.g.*, *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 702, 874 P.2d 506, 513 (1993) (holding that measure of damages for a construction defect case is either the cost to complete or remedy the construction or the diminution in value of the property). The record does not reveal how or why the district court determined that granting the Pinkhams their total expenditures constituted an appropriate measure of damages.

16

In sum, this award of nearly $650,000 in damages was issued without (1) any amount being pleaded in the unverified complaint, (2) any amount being requested in the motion for a default judgment, (3) any proof of the amount set forth in the proposed default judgment, or (4) any explanation from the district court as to the legal or factual basis for the amount it ultimately awarded. Thus, this is not only a default judgment that was unsupported by the complaint (since the complaint did not seek a sum certain), *see Golub*, 157 Idaho at 971, 342 P.3d at 898, but it also appears to be the type of "rubber stamped" award of damages we have previously cautioned against. *Garcia*, 161 Idaho at 621, 389 P.3d at 166. Accordingly, the judgment is void under Rule 60(b)(4). *See Golub*, 157 Idaho at 972, 342 P.3d at 899.

To be clear, the Pinkhams were entitled to an entry of default and a default judgment. It has long been understood that a party who allows a default to be entered against it concedes liability. *E.g.*, 46 Am. Jur. 2d Judgments § 285 ("An entry of default establishes a party's liability."). Appellants were provided notice of what could happen if they failed to take the necessary steps to defend their interests, yet they failed to take the necessary steps. Thus, due to their own lack of diligence, Appellants may no longer contest liability. However, since no amount of damages was pleaded in the unverified complaint, and no proof of damages was provided to the district court when the Pinkhams sought their default judgment, the amount of damages to which the Pinkhams are entitled remains an open question.

When a party states in its complaint that it is "seeking damages in an amount to be proven at trial," and it later prevails by default, it must present some form of acceptable proof in order to receive a sum certain via a default judgment. Because the record of the proceedings below fails to provide a factual basis for the damages awarded, we reverse and remand this matter so that the district court may receive proof as to the amount of damages the Pinkhams are entitled to before entering judgment. While the Pinkhams are clearly entitled to be made whole for the Appellants' conduct in this matter, the amount Appellants are ordered to pay must be ascertained through proof that is subject to review on appeal. For instance, in addition to the liquidated claims set forth in a *verified* complaint, the type of proof the district court may consider in granting a default judgment includes affidavits under Rule 55(b)(1) or by conducting an evidentiary hearing under Rule 55(b)(2). *See* I.R.C.P. 55(b).

We also note that our decision today is rooted in our determination that, as the more specific rule, Rule 11.3 only governed the *entry* of the default judgment in this case, not the method for

17

ascertaining the *amount* of the judgment. Of course, had Rule 55 solely applied to this case, the district court would have known that the presentation of proof was required to support the amount of damages sought. Nevertheless, we remind our trial judges to exercise caution before issuing a default judgment. It is worth repeating that the role of a district court following entry of default is "not simply . . . to rubber stamp the damages asserted by the Plaintiffs." *Garcia*, 161 Idaho at 621, 389 P.3d at 166. Rather, trial courts should carefully review every proposed default judgment to ensure that the amount it awards complies with the requirements of Rule 55(b). In sum, awarding damages in a defaulted case—a judicial act that may seem routine or commonplace—should never become perfunctory, regardless of whether the amount sought is $650.00 or $650,000.00.

Because our decision on this issue is dispositive to Appellants' remaining argument raised under Rule 60(b)(6), we need not address it on appeal.

**D. Neither party is entitled to attorney fees on appeal.**

Both parties seek attorney fees on appeal under the construction contract and Idaho Code section 12-120(3). Regarding the construction contract, "[w]here there is a valid contract between parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." *Humphries v. Becker*, 159 Idaho 728, 739, 366 P.3d 1088, 1099 (2016) (quoting *Farm Credit of Spokane v. W.W. Farms, Inc.*, 122 Idaho 565, 569, 836 P.2d 511, 515 (1992)). "This Court may award attorney fees on appeal in accordance with a contractual provision." *Off-Spec Sols., LLC v. Transp. Invs., LLC*, 168 Idaho 734, 740, 487 P.3d 326, 332 (2021) (citation omitted). The parties' contract states that all reasonable attorney fees and costs incurred by a party "that arise out of the breach of this Contract by the other party, or that arise by a failure in the other party's obligations, shall be paid by the party who has breached or who has otherwise failed to perform."

We decline to award attorney fees to the Pinkhams under this provision because the appeal did not arise out of a breach of the contract or a failure in either party's obligations under the contract. While the underlying litigation arose out of Appellants' breach of the construction contract, the gravamen of this appeal concerns whether the district court complied with the rules and procedures associated with default judgments. As a result, the Pinkhams' attorney fees on appeal were not incurred out of a breach of the contract or due to a failure in the other party's obligations, but in defending the district court's decision to improvidently award damages that were neither pleaded nor proved. Similarly, we decline to award the Appellants their attorney fees

18

under the contract because they are in default and, therefore, they cannot argue that their fees resulted from either a breach by the Pinkhams or by their failure to perform their obligations under the contract.

Likewise, we decline to award either side attorney fees under Idaho Code section 12-120(3), which requires that attorney fees be awarded to the prevailing party in a case concerning a commercial transaction. Here, both parties prevailed in part, making an award of attorney fees under this section improper. *See City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 732, 418 P.3d 1225, 1241 (2018). Additionally, we note that the contract at issue here concerned the construction of a home for personal use. An agreement to construct a house for personal use is not a "commercial transaction" for purposes of section 12-120(3). *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 599, 338 P.3d 1193, 1203 (2014).

## IV. CONCLUSION

We affirm the district court's order denying Appellants' motion to set aside the entry of default. However, we vacate the default judgment for the reasons stated and remand for a determination as to the proper amount of damages based on the proof submitted. We decline to award attorney fees or costs on appeal.

Chief Justice BEVAN and Justice STEGNER **CONCUR.**


ZAHN, Justice, dissenting.

The majority's opinion rests on case law which holds that a district court lacks jurisdiction to enter a default judgment awarding a type of relief that differs from the type of relief demanded in the complaint. However, the problem with the default judgment in this case was not that the district court awarded a different type of relief, but that the district court awarded an amount not specifically pleaded in the complaint or supported by the evidence. A lack of evidentiary support for a damage award presents a proof problem, not a jurisdictional one. The majority opinion errs in concluding that a proof problem rendered the default judgment void, which necessarily constitutes a conclusion that the district court lacked jurisdiction to enter the default judgment. A lack of evidentiary support for a damage award does not deprive the district court of jurisdiction or otherwise render a default judgment void under Idaho Rule of Civil Procedure 60(b)(4). I therefore respectfully dissent.

19

Before I turn to the merits of the issue at hand, I first want to be clear that my opinion today should not be construed as an endorsement of the process that resulted in the default judgment in this case. Without question, the best practice would have been for the Pinkhams to submit evidence and briefing in support of their motion for default judgment to establish the legal and factual basis for the damages requested. Alternatively, the district court should have held a hearing to determine the proper measure of damages. However, for the reasons I explain below the failure to follow best practices did not render the default judgment in this case void.

Rule 60(b)(4) allows a district court to set aside a void judgment. Motions under Rule 60(b) generally need to be filed within a reasonable time, and in some instances no more than six months after entry of judgment. I.R.C.P. 60(c). However, a motion pursuant to Rule 60(b)(4) may be filed at any time. *Golub v. Kirk-Scott, Ltd.*, 157 Idaho 966, 970, 342 P.3d 893, 897 (2015). For that reason, we have held that "[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted." *Id.* (alteration in original) (quoting *Gordon v. Gordon*, 118 Idaho 804, 807, 800 P.2d 1018, 1021 (1990)). In *Golub*, we described the circumstances under which a judgment could be declared void:

> "Generally, the Court may declare a judgment void only for defects of personal jurisdiction or subject-matter jurisdiction," or where the "court's action amounts to a plain usurpation of power constituting a violation of due process." [*Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009)]. Although if "a default judgment exceeds the demand of the complaint, the excess is void[.]" *Hayes v. Towles*, 95 Idaho 208, 211, 506 P.2d 105, 108 (1973)[.]

*Id.*

The majority opinion relies primarily on the last circumstance—this Court's statement in *Hayes* that, if a default judgment exceeds the demand of the complaint, then the excess is void. That statement was based on the legal premise that, "[t]he district court is *without jurisdiction* to enter a default judgment which differs in kind from or exceeds in amount that demanded in the prayer of the complaint." *Hayes v. Towles*, 95 Idaho 208, 211, 506 P.2d 105, 108 (1973) (emphasis added) (first citing *Cobb v. Cobb*, 71 Idaho 388, 390, 233 P.2d 423, 424 (1951); then citing *Sonleitner v. McLaren*, 52 Idaho 791, 794, 20 P.2d 1014, 1015 (1933)). Because the statement from *Hayes* is grounded in a lack of jurisdiction, the majority opinion in this case rests on a presumption that the district court lacked jurisdiction to enter a default judgment in an amount that exceeded the amount demanded in the complaint.

But an examination of *Hayes* reveals that its statement concerning the jurisdiction of the district court does not sweep so broadly. Nothing in *Hayes*, or the cases on which it relies, suggests that a district court is without jurisdiction to enter a default money judgment that exceeds the amount demanded in the complaint. Rather, the statement concerns circumstances where the relief granted differed or deviated from the relief prayed for in the complaint.

Our decision in *Hayes* concerned whether a variance between the child support request contained in a divorce complaint and the child support ordered in the default divorce decree rendered the divorce decree void and unenforceable. *Id.* at 209–11, 506 P.2d at 106–08. The wife's divorce complaint prayed for child support to continue until the children reached the age of eighteen or the wife remarried "under such circumstances as said payments shall become unnecessary for the support of said children." *Id.* at 209, 506 P.2d at 106. The husband failed to appear in the action. *Id.* The district court declared him to be in default and entered findings of fact and conclusions of law that required the husband to pay child support for the same duration requested in the complaint. *Id.* The district court subsequently entered a default decree of divorce, which required the husband to pay child support each month but omitted the duration language contained in the complaint and its findings and conclusions. *Id.*

The husband was later held in contempt for failure to pay child support and appealed the contempt finding to this Court. *Id.* at 210, 506 P.2d at 107. He argued that the default divorce decree was void because the child support award in the decree differed from the relief sought in the wife's divorce complaint. Specifically, the decree did not order that he only needed to pay child support until the children turned eighteen or the wife remarried. *Id.* This Court's analysis noted that the district court was without jurisdiction to enter a default judgment that differed in kind from or exceeded the amount demanded in the prayer of the complaint. *Id.* at 211, 506 P.2d at 108. We also observed that, "[i]f, through judicial error, a default judgment exceeds the demand of the complaint, the excess is void." *Id.* (first citing *McHan v. McHan*, 59 Idaho 496, 506, 84 P.2d 984, 987–88 (1938); then citing *Mason v. Pelkes*, 57 Idaho 10, 19, 59 P.2d 1087, 1091 (1936); then citing *Stablein v. Stablein*, 368 P.2d 174 (Wash. 1962); and then citing *Wright v. Atwood*, 33 Idaho 455, 461, 195 P. 625, 627 (1921)). We ultimately held that the variance was not the result of judicial error, but instead of oversight or omission and therefore rejected the husband's claim that the decree was void. *Id.*

21

Nothing in *Hayes* suggested that a district court lacked jurisdiction to enter a default judgment awarding monetary damages in excess of those demanded in the complaint. Nor did any of the Idaho cases on which *Hayes* relied suggest as much. Rather, the Idaho cases cited in *Hayes* involved situations where *the type* of relief awarded differed from *the type* of relief demanded in the complaint. *See Cobb*, 71 Idaho at 390, 233 P.2d at 424 (declaring as void a default divorce decree that voided a stipulated property settlement and awarded plaintiff a significant amount of the community property when the divorce complaint asserted community property had been satisfactorily divided between the parties and sought a $3,500 judgment against defendant); *Sonleitner*, 52 Idaho at 794, 20 P.2d at 1015 (observing that in a suit to foreclose liens filed against real property, any judgment directing the sale of the real property would be void because it was in excess of the relief prayed for in the complaint); *McHan*, 59 Idaho at 506, 84 P.2d at 988 (holding that the portion of a default divorce decree awarding wife $35 per month for the rest of her life was void because it varied from divorce complaint that sought alimony; state law provided that alimony could be modified, including upon wife's remarriage); *Mason*, 57 Idaho at 19, 59 P.2d at 1091 (observing that in suit seeking to enjoin a mining company from selling stock during the pendency of the litigation, any portion of the default judgment that also prohibited the mining company from taking any further proceedings in a probate matter was void because it exceeded the relief demanded in the complaint); *Wright*, 33 Idaho at 461, 195 P. at 627 (noting that "[i]f a court grants relief which under no circumstances it has any authority to grant, its judgment is to that extent void, although it may have had jurisdiction over the subject-matter and the parties"). The only case cited in *Hayes* that concerned the monetary amount awarded is the *Stablein* decision from Washington state. In that case, the Washington Supreme Court held that the child support provision in a default divorce decree was void because it ordered the father to pay $65 per month while the mother's complaint only sought $50 per month. *Stablein*, 368 P.2d at 176. The decision was brief, and it was unclear whether Washington had special rules applying to child support awards. At any rate, the Washington decision is not controlling on this Court.

As illustrated above, this Court's decisions have consistently held that the district court's jurisdiction is limited to awarding *the type* of relief sought in the complaint. This Court held as much in *Gile v. Wood*:

> In addition to the jurisdiction of the parties and the subject matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question

22

which its judgment assumes to decide, or of *the particular remedy or relief* which it assumes to grant[.]

*Gile v. Wood*, 32 Idaho 752, 754, 188 P. 36, 37 (1920) (quotation marks and citations omitted) (holding that a default judgment against Wood for deficiency remaining after foreclosure sale was void because the complaint only sought to extinguish Wood's subordinate interest in the real property and did not assert that Wood was personally liable for the underlying debt). Nothing in these decisions suggests that a district court lacks jurisdiction to enter a money judgment requested in a complaint simply because the amount of damages awarded exceeds the amount demanded in the complaint. To the extent that our decision in *Golub* could be read to suggest otherwise, it misapplied *Hayes* and the cases cited therein. The Pinkhams sought a money judgment, and therefore the district court had jurisdiction to grant one. The lack of evidentiary support for the amount awarded did not deprive the district court of jurisdiction to grant the judgment.

The majority also contends that its conclusion is consistent with the requirements of Rule 54(c) and Idaho Code section 5-336. In basing its holding on Rule 54(c), section 5-336, and this Court's decisions in *Golub* and *Hayes*, the majority opinion effectively holds that the requirements of Rule 54(c) and section 5-336 are jurisdictional. While it is true that both provisions state that the amount of a default judgment must not exceed the amount demanded in the pleadings, neither provision mentions jurisdiction or purports to deprive the district court of jurisdiction in that circumstance.

Today's result opens the door for litigants to seek to void default judgments, no matter how old, on the basis that there was insufficient evidence to support the damages awarded. While this case results from the lack of evidentiary support provided in connection with the motion for default judgment, the majority's conclusion is not limited to cases where no evidence was presented. The majority holds that "Appellants are entitled to relief on appeal given the lack of proof in the record justifying the amount awarded in the default judgment." If a judgment is void simply due to a lack of proof in the record to support the damage award, then litigants are entitled to challenge even those default judgments entered in conformance with Rule 55(b) on the basis that the evidence presented did not support the amount awarded. Today's result is a significant departure from our recognition in *Golub* that "[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted." 157 Idaho at 970, 342 P.3d at 897 (alteration in original) (citation omitted).

Before closing, I note that the Appellants were not without a remedy in this case. This Court has observed that a discrepancy between the amount of relief sought in a complaint and the

23

amount of relief awarded by the district court may be a unique and compelling circumstance upon which relief may be granted from a judgment pursuant to Rule 60(b)(6). *Dawson v. Cheyovich Fam. Tr.*, 149 Idaho 375, 381, 234 P.3d 699, 705 (2010) (observing that the case may constitute unique and compelling circumstances justifying relief under Rule 60(b)(6) when plaintiff's complaint only pleaded an entitlement to a one-fourth interest in real property but district court's order quieted title to entire property in plaintiff). However, aside from quoting the language of I.R.C.P. 60(b)(6), the Appellants did not cite the standard applicable to Rule 60(b)(6) motions, made no argument that the lack of evidence supporting the damage award constituted a "unique and compelling circumstance" under the rule, or cite any case law concerning Rule 60(b)(6). "We will not consider an issue not 'supported by argument and authority in the opening brief.'" *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citations omitted).

       For the foregoing reasons, I respectfully dissent.

Justice BRODY concurs in the dissent.